EDWARD A. LINES *v.* JUSTIN SPEAR, ROBERT J. HENRY and
ROBERT JOHNSON.

Where a bill makes a case for an injunction, the injunction will not be dissolved until
the material allegations of the bill are denied by answer.  If the answering defend-
ants are unable, from want of knowledge, to deny allegations of the bill which are
material to its equity, the injunction is retained.  It stands on the case made by the
bill, and will be held until that case be overcome.  That the only defendant who can
answer such allegations is absent from the State is no ground of exception to the
general rule.

The bill, exhibited April 4, 1849, states that, early in August,
1847, Edward A. Lines, the complainant, then residing and
doing business in Chatham, Columbia county, New York, at the
solicitation of Justin Spear, one of the defendants, then residing
and doing business as a grocer in Newark, New Jersey, agreed
with said Spear to enter into a co-partnership with him in said
grocery business in Newark, and to put into said business $400
in cash ; in consideration of which the complainant was to be en-
titled to the half of all the stock in trade then owned by said
Spear, and to purchase from said Spear, for the sum of $600,
the undivided half of two lots of land (described in the bill) in
Newark aforesaid, being Nos. 31 and 32 Kinney street.   And
the complainant was, by the said agreement, to be an equal part-
ner in said business with said Spear, in all respects, during the
continuance of said partnership ; to which there was no limit set.
by the said agreement.

That the store wherein Spear was then doing business, and.
wherein it was agreed that the partnership business should be
carried on, is situated on the last described of said lots, and
there is a dwelling-house on the first described of said lots.

That, at the time of the making of the said agreement, Spear
represented to the complainant, as an inducement to the com-
plainant to enter into the same, that the said real estate was un-
incumbered save by a mortgage of $600, which he, Spear, was
going to take up with the $600 agreed to be paid by the com-

plainant as aforesaid; and represented to the complainant that the said store was an excellent stand for business; that he, Spear, had already a business very firmly established there, but it being a business which required more capital than he could command, that complainant, by entering into said agreement with him, would be greatly advantaged, as well by the profits of said business as by the said purchase of half of said real estate.

That, in pursuance of said agreement, the complainant moved, with his family, to Newark, and on or about April 1, 1848, he and his family entered into the occupancy of said dwelling-house, and have continued to occupy the same ever since, the complainant not being able to occupy said house before that time because, before the making of said agreement, it had been rented by said Spear until April 1, 1848. And the complainant entered into the joint occupancy of said store with Spear, as partner with Spear; Spear and his family occupying a portion of said building on said second lot used as a store.

That on or about September 8, 1847, the complainant, at the request of Spear, and in pursuance of said agreement, paid to him $1,000, Spear declaring to complainant that he wanted to use $600 thereof to pay off said mortgage of $600.

That complainant and Spear continued to carry on said business, in partnership, under said agreement, until on or about January 5, 1849, when the same was dissolved by mutual consent as hereinafter mentioned. That during all the period of said partnership, the reparations done to the houses on the said two lots, which amounted to $200, were paid for out of the moneys of said partnership, as were, also, the taxes and a considerable sum of money assessed on said property for grading Kinney street, and all the interest on the mortgages on said premises, amounting to a considerable sum, the complainant finding, after he had entered into said partnership, that the incumbrance on said premises was much larger than Spear had represented. That said property was taxed to the firm of Spear & Lines, during all that period, by the express directions of Spear; and that, at all times during said period, Spear gave out and ad-

mitted that said land belonged to him and the complainant together.

That, straightway after the payment by the complainant of said $1,000 to Spear, complainant requested Spear to execute and deliver to him a deed for his half of said real estate; but Spear put him off by a promise that in a day or two, when he and complainant had leisure, they would go to a lawyer and have the deed drawn, executed and properly delivered to the complainant, and gave the complainant a receipt for said $1,000, as a memorandum until said deed could be drawn and delivered. That complainant, from time to time, importuned Spear for said deed; but Spear as often, on one pretext or another, delayed the matter until on or about January 1, 1849, when, having casually heard that Spear had made an agreement with one Robert G. Henry to sell said land to him, the complainant immediately charged Spear with the fact, and upbraided him for having undertaken to sell what was not his property, in agreeing to sell the whole of said land to said Henry. And thereupon Spear admitted he had made said agreement with Henry, but added, that the complainant had no cause of apprehension, since it would amount to nothing and would not be a sale; that Henry was worth little if anything, and could not take the property.

That, a few days after, Spear made a calculation of the net value of the partnership property of Spear & Lines (in which statement was included all of said real estate) after paying the debts of said firm, and exhibited the same to the complainant, and declared, and showed by his calculation, that the amount of money to which he and complainant were jointly entitled as the net value of all and singular their partnership property, including said real estate, after paying all the debts and incumbrances, was $1,950; and thereupon the complainant offered to sell out his interest to Spear for $975—$25 less than he had paid; but Spear alleged, that being tired of the grocery business, and not having the means to buy the complainant's interest and carry on the business, he would be willing to sell his interest to the complainant for $850.

That, having confidence in Spear's representations, seeing that Spear had, ever since the commencement of said partner-

ship, had the entire management of the out-door business of the concern, making the purchases and having the charge of the payment of the debts of the concern and the collection of moneys due the firm, and the said statement and calculation of Spear appearing, by an examination of the books of the firm, to be correct and just, and the complainant being extremely solicitous to save himself as best he might from further loss by said business connection, though Spear had but a few weeks before assured the complainant that the firm was making money, agreed with Spear to purchase Spear's interest in said business and real estate, for the sum of $850, and that the said sum should be paid to Spear out of the proceeds of the sale of said real estate to said Henry, if Henry should take it, otherwise by complainant, if Henry should fail to take said property ; and thereupon the complainant was to have a deed for said real estate and was to assume the debts of the firm and take the stock and moneys due the firm. And, a few days after, Spear went to an attorney and procured a certain instrument of writing to be drawn whereby, after reciting, in effect, that there existed an agreement executed between said Spear and said Henry for the sale of said land to Henry for $2,800, it was stipulated, in effect, that in case Henry should take the premises on the 1st of April, 1849, then that the complainant should have $150, out of said $2,800, (the incumbrances by way of mortgage on said property being estimated to amount to $1,800,) and should yield up the possession of said premises on said 1st of April. And complainant believes it was further stipulated, in said instrument, that in that case the complainant was to pay $50 for the use of the premises from the time of the entering into said agreement between the complainant and said Spear until said 1st of April. But the complainant, having no copy or memorandum of said instrument, cannot speak positively as to the contents thereof, the same being in the possession of Robert Johnson hereinafter mentioned, or of his attorney, and said Johnston's attorney having refused to complainant's attorney access thereto or a copy thereof, alleging that Johnston was unwilling that complainant's attorney should see it or have a copy of it, and that Johnston was unwilling to give the complainant a stick to beat out his, Johnston's, brains

with, or words to that effect.   And it was further stipulated by the said instrument, in case Henry should not take the premises on said 1st of April, then that the complainant should be enti-tled to the same, and should pay Spear $850 in cash, said prem-ises being subject to the aforesaid incumbrances.

That, at the time of executing said agreement, Spear, with his wife, executed to the complainant a deed for said premises, and left it in the hands of A. S. Hubbell, Esq., to be delivered to the complainant in case Henry should fail to take said prem-ises on said 1st of April.

That, according to said last mentioned agreement between him and Spear, he did, on or about January 5, 1849, by an agree-ment then made with Spear, assume the debts of said firm, and Spear transferred to him all Spear's share and interest in the goods in said store and the books of account, debts, dues, rights and credits of said Spear & Lines, and the said firm was there-upon dissolved.

That, in a very few days after such dissolution, he discovered that Spear had omitted, in his said calculation, debts which had been contracted by him in the name of said firm, and of which the complainant had no account in the books of said firm or otherwise, to the amount of $150.   That he spoke to Spear, immediately after such discovery and on or about January 19, 1843, and charged that it evinced bad faith in Spear in inducing the complainant to make said agreements; and Spear alleged that said debts had escaped his recollection; and that he would give complainant his two notes for $75 each, payable in three and six months; and said there would be no question about the payment of said notes, as he Spear was about going into busi-ness.   And Spear proposed that, on giving said notes, the com-plainant and he should each sign a short paper ratifying said agreement of January 5, 1849; to which proposition the com-plainant, believing Spear's statement, consented; and Spear then gave complainant said two notes for $75 each, dated January 19, 1849, payable in three and six months, to complainant's order, without defalcation or discount; and Spear then drew a paper setting forth, in effect, that in consideration of a further settle-ment with him, Spear, it was understood that the agreement made

with Spear on the 5th January, 1849, should be carried out the same as if no new arrangement had been made; which paper was signed by complainant, and immediately thereafter Spear left the store wherein said last mentioned transaction had taken place, and, in company with said Robert Johnston, who was waiting for him, went to New York to engage his passage and make arrangements to go to California.

That said notes remain in complainant's hands wholly unpaid. That said Robert Johnston was present at and cognizant of said last mentioned transaction, and fully aware of the fraud thereof.

That, in a few days after this last transaction, the complainant discovered that Spear had involved the partnership in another debt, of $158, or thereabout, and of which no account had been in any way given to the complainant, nor any entry thereof made in any of the books of said firm, nor any mention made in the said calculation of said Spear; but the same had been kept entirely out of sight and from complainant's knowledge, by Spear. And the complainant, directly, undertook to get some explanation from Spear; but after repeated efforts was unable to do so; and at last, Spear, to rid himself of complainant's importunities on the subject, appointed a meeting at complainant's house for the purpose of giving the complainant the desired explanation; but Spear, at or near the time so appointed, went secretly, in the night, to New York, and there went on board a vessel bound for California, and remained there until the vessel sailed.

That, from time to time, since January 19, 1849, the complainant has discovered debts, amounting to more than $600, which had been contracted in the name of said firm, prior to the dissolution, by Spear, without complainant's knowledge, and of which Spear had made no account in the books of the firm, nor in his said calculation; the existence of which was well known to Spear at the time of entering into said agreement for dissolving said partnership, and was fraudulently concealed by him from the complainant.

That in said calculation made by Spear many of the debts due from said firm, and which had been contracted by Spear, in New York, in the name of the firm, were put down at sums considerably below their real amount, and some of the assets of the firm

were put down at amounts far exceeding their real value. And the complainant charges that Spear made the said calculation in manner aforesaid and with the concealments aforesaid with the deliberate intention thereby to defraud the complainant out of his portion of said real estate, and fraudulently to prevail on the complainant to assume the payment of the debts of the firm; the complainant showing that the assets of said firm, exclusive of said real estate, were insufficient by $1100, or thereabouts, for the payment of the debts of the firm; but which fact was studiously and fraudulently concealed from the complainant by Spear.

That, on or about January 16, 1849, as the said Robert Johnston pretends, but the complainant prays a discovery thereof, Spear pretended to convey to said Henry the said premises, for $2,800, subject to the mortgages on said premises; and, as part of the same transaction, Henry pretended to convey to said Robert Johnston the same premises, for the same consideration, subject to the mortgages; and that, at the time of the execution of the last mentioned conveyances, the deed which had been left in the hands of said A. S. Hubbell for delivery to the complainant in case Henry should fail to take said premises on the 1st of April, 1849, was destroyed by or at the instance of Spear, Henry and Johnston or one of them. That the making of said pretended conveyances and the destruction of said deed took place without complainant's knowledge; nor had he any intimation thereof until some time in March, 1849.

That, at the time of the making of the said agreement between Spear and Henry for the sale of said property, the complainant's interest in said property was well known to the agent of Henry who negotiated the matter and to said Henry; Spear having theretofore expressly told said agent; and when inquired of by said agent, in the presence of Henry, concerning the complainant's interest in the said property, Spear replied that the complainant had nothing to show for it. The complainant therefore charges that Henry had full and complete notice of the complainant's interest in said property. The complainant also charges that the said agreement between Henry and Spear was a fraud

upon the complainant, and intended as such by Spear and Henry.

That, after said agreement between Spear and Henry had come to the knowledge of the complainant, and some time prior to January 5, 1849, and before the said conversation between complainant and Spear which resulted in the making of the said calculation by Spear, the complainant was in the bakery of A. Johnston, and the said Robert Johnston was also there ; and the conversation between the complainant and A. Johnston turned upon the said agreement between Henry and Spear for the sale of said premises ; and the complainant, there, in the hearing of said Robert Johnston, complained that Spear had agreed to sell said premises to Henry, and had made the proceeds of such sale payable to himself, and not to the complainant and him jointly, since ' the complainant's interest in the property was equal to Spear's, or used words to that effect. That A. Johnston, the brother and friend of R. Johnston, well knew, from the time of complainant's arrival in Newark, after entering into said partnership with Spear, that the complainant was an equal owner of said property with Spear ; the said A. J. having, shortly after complainant's arrival in Newark, spoken to the complainant on the subject and advised him to search the records for incumbrancces on said property.

That said R. J. well knew of the complainant's interest in said premises, and was well aware of the fraudulent conduct of Spear towards the complainant ; and the complainant also charges that the taking of said deed by him from Henry was a fraud upon the complainant, and an attempt by said R. J., in combination with Spear and Henry, to deprive the complainant of his known interest in said premises.

That complainant's interest in said premises was well and generally understood by the persons with whom said firm had transacted business.

That the delivery of said deed to Henry and the conveyance by Henry to R. J. was a fraudulent contrivance intended to give the transaction the appearance of fairness as though Henry had fulfilled said agreement between him .and Spear. That since said conveyance by Henry to R. Johnston, Henry has never taken

a deed for said premises. That, since said pretended conveyance to Henry and by him to R. J., Henry has declared that he had taken the deed and paid the consideration ; and has also since declared that he has not fulfilled said agreement between him and Spear ; and has also said that all the money Spear received for said premises he, Spear, had received from R. J., but that he, Henry, could not say how much ; and, since then, R. J. has said that he *bona fide* took said deed from Henry and paid him the full amount of $1,000, the consideration by said agreement between Henry and Spear to be paid for said premises over and above the incumbrances thereon ; and at other times the said R. J. has said that he did not purchase the said premises, but loaned $1,000 to Henry to enable him to fulfill said agreement and take said deed ; and that he, R. J., took said deed from Henry to secure himself for said loan of $1,000 ; and that he was afraid that Henry would not take said premises on said 1st of April, 1849, and desired that the complainant would take them off his hands and pay him said money paid, as said R. J. alleges, by him to Henry.

That the complainant has been informed and believes that, since the said pretended conveyance by Henry to R. J., the said R. J. has sent word to Henry that he wanted him, Henry, to take said premises on said 1st of April, according to said agreement of Henry with Spear, and that Henry has returned for answer that he would not take said premises because said R. J. had not complied with the agreement between them, which was to the effect that R. J. should clear the property of one of the mortgages upon it, and that that must be done by R. J. before he, Henry, would consent to take the deed according to said agreement with Spear.

That Henry, on being inquired of by complainant as to whether any provision was made, in said pretended purchase by Henry, for the payment to the complainant of the $150 mentioned in the said agreement between Spear and the complainant, and made payable in case Henry should take said property on said 1st of April, 1849, has replied, at some times, that said sum would be paid by him to complainant and that complainant need have no apprehension about it. But complainant shows that

neither said Henry nor said R. J., nor Spear, have at any time paid said money ; but, instead thereof, the said Henry and R. J. declare that it is uncertain whether complainant will be entitled to it.

And complainant believes and charges, that Henry and R. J. intend, in confederacy with Spear, to defraud the complainant as well of said $150 as of his entire interest in said real property.

That Spear, as complainant is informed and believes, did, very shortly before his departure for California, confess, or in some way cause to be entered up, a judgment or judgments against him in favor of said R. J., whereupon execution or executions have been issued and levied on all the personal property of said Spear, household goods, &c.; which personal property is now held by said R. J. under cover of said levies ; no sale having been made.

That, shortly before Spear's said departure, the said R. J. declared that Spear owed him nothing.

That since said levies the said goods and personal property have remained in the possession of the wife of Spear ; and she has lately declared that she is willing to rent part thereof, and intends to find storage for the remainder during an absence from the State which she contemplates.

That, shortly before Spear's said departure, he executed to said R. J. a power of attorney, and that, by virtue thereof, said R. J., since Spear's departure, has possession of Spear's books of account and other evidences of debt belonging to Spear, and is collecting the moneys due thereon.

The complainant charges, that said confessed judgment is frudulent, and was made with a view of preventing the complainant from obtaining any payment out of the personal property of Spear on the said two notes of $75 each, and any redress for the manifold deceptions and frauds before mentioned, practised by Spear on the complainant ; and that said power of attorney was given with the like intention.

Complainant believes and charges that no consideration was in reality given by R. J. to Spear or Henry for said deed ; and that if any money passed between R. J. and Henry and Spear on said pretended delivery of said deeds from Spear to Henry and from

Henry to R. J., the same was paid simply to give the color of fairness to the transaction, and was in some way returned to said R. J. by said Spear, by virtue of some agreement between them to that effect.

That Henry has not, as complainant believes, and he has taken pains to inform himself, paid any money to R. J. on account of said property, in any way.

That R. J. has, inequitably and unjustly, commenced proceedings against the complainant for the recovery of the possession of said premises, before C. H. A., a Justice, and has also commenced a suit before the same Justice against the complainant, in the name of Spear, to the use of said R. J., for the collection of the said $50 in and by said agreement between complainant and Spear stipulated to be paid to Spear in the event of Henry's taking the premises on said April 1st, 1849.

That Spear, shortly prior to said 16th January, 1849, after the dissolution, offered said premises to a merchant in Newark, and to take his unsecured note therefor, for $850; and that said Spear proposed said sale for the declared purpose of depriving the complainant of his interest in said premises. Complainant charges that Johnston, having notice of complainant's interest, and combining with Spear in said pretended conveyance thereof to him, Johnston, by Henry, ought not to be permitted to hold complainant's interest in said premises under said pretended conveyance.

The bill prays, that the said agreement in writing, made by the complainant with Spear, touching said real estate and the disposition of the moneys arising from the sale thereof to Henry, or the taking of the deed therefor by the complainant in case of the failure of Henry to take said deed therefor, may be set aside; the same having been obtained by fraud, deception and imposition upon the complainant, by Spear, with the aid and combination, as complainant believes, of R. J. and Henry; and that the said other agreement, between the complainant and Spear, touching the dissolution of said partnership may be set aside, the same having also been obtained by fraud and imposition on the complainant. And that Henry, R. J. and Spear, or one of them, may be decreed to pay to the complainant the half of said prem-

ises ; and that an account may be taken of the partnership business from the commencement thereof until the time of the dissolution, as well as of all payments of debts of the firm paid by complainant since said dissolution ; and that Spear may be decreed to pay to the complainant, out of the other half of said property, his just proportion of the debts of said firm so paid by the complainant since said dissolution, as well as his proportion of those unpaid at this time ; or, if the Court shall be of opinion that the complainant is not entitled to the relief before prayed, then that the said deed to R. J., if it should appear that any money was advanced by him *bona fide* thereon to said Henry, (which the complainant believes and charges is untrue,) be held to be a lien on the said premises only to the amount of such advance, and liable to be discharged by the payment of the amount so advanced, with the interest thereon ; or, if the Court shall think the complainant is not entitled to any of the before mentioned relief, then that the said Henry, R. J. and Spear, or one of them, be decreed to pay the complainant the said sum of $150 mentioned in said agreement between the complainant and Spear touching said real estate and the disposition of the proceeds thereof in case said Henry should take the same on the 1st of April, 1849 ; and that said R. J. be injoined from conveying or incumbering the said premises ; and from prosecuting said suits at law, or taking any step for the recovery of the possession of said premises, or for the ouster of the complainant therefrom, or for the collection of the said $150 stipulated as aforesaid by said agreement to be paid by the complainant to Spear on the said 1st of April in case Henry should take said land and premises ; and for such other and further relief, &c.

On the reading of this bill the injunction prayed was allowed.

The defendants Henry and Johnston put in their answer to the bill ; and thereupon moved to dissolve the injunction.

In reference to material allegations of the bill, these defendants answered that they had no knowledge.

No answer was put in by the defendant Spear.

*J. Chetwood* and *A. S. Hubbell* in support of the motion. They cited 1 *Green's Ch.* 172, 404; 3 *Ib.* 446.

*A. Whitehead* contra.   He cited 1 *Paige*, 164; *Dev. Eq.* 429; 3 *Eq. Dig.* 457; *Hopkins*, 148; 2 *John. Ch.* 204.

THE CHANCELLOR.   I see no satisfactory ground on which this case can be made an exception to the general rule that an injunction will not be dissolved without the answer of all the defendants implicated.

Where a bill makes a case for an injunction, the injunction will not be dissolved until the material allegations of the bill are denied by answer.   If the answering defendants are unable, from want of knowledge, to deny allegations of the bill which are material to its equity, the injunction is retained.   It stands on the case made by the bill, and will be held until that case be overcome.   That the only defendant who can answer such allegations is absent from the State is no ground of exception from the general rule.   In this case, the answering defendants say, in reference to several such allegations, that they have no knowledge.

Motion denied.